1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**REESE LLP**
Michael R. Reese (SBN 206773)
Sue J. Nam (SBN 206729)
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Email:  *mreese@reesellp.com*
        *snam@reesellp.com*

**REESE LLP**
Charles D. Moore (to be admitted *pro hac vice*)
100 South 5th Street, Suite 1900
Minneapolis, MN 55402
Telephone: 212-643-0500
Fax: 212-253-4272
Email: *cmoore@reesellp.com*

**REESE LLP**
George V. Granade (SBN 316050)
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile  (212) 253-4272
Email: *ggranade@reesellp.com*

*Counsel for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARCHEAL REED, SUSAN LEO KOPKO, and LINDA LIVINGSTON on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES INC,<br><br>Defendant. | Case No. 22-cv-00596<br><br><u>CLASS ACTION COMPLAINT FOR:</u><br><br>1.  Violation of the California Consumers Legal Remedies Act<br>2.  Violation of the California False Advertising Law<br>3.  Violation of the California Unfair Competition Law<br>4.  Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law<br>5. Violation of Illinois Consumer Protection Law<br><br>JURY TRIAL DEMANDED |

Plaintiffs Darcheal Reed, Susan Leo Kopko, and Linda Livingston (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated ("the Class"), bring this action against Uber Technologies Inc. ("Defendant") based upon Defendant's misrepresentations concerning its "Upfront Pricing" for Uber rides.

## INTRODUCTION

1.    Defendant develops, markets and, facilitates the sale of shared rides through its well-known Uber ride-hailing app ("the App"). Starting in 2016 and continuing through to today ("Class Period"), Defendant marketed its App as having Upfront Pricing - a feature Defendant claimed provided accuracy, transparency, simplicity, and certainty to riders by notifying them of the total cost of a ride prior to purchase. Unfortunately for consumers this was and is untrue, as Defendant routinely overcharged consumers.

2.    This is a class action on behalf of California, Pennsylvania and Illinois consumers who used Defendant's App, and were charged more than the price they were quoted at the beginning of their ride (*i.e.* the "upfront price.").

3.    In a classic bait and switch scheme, under the so-called Upfront Pricing, Defendant promises consumers one price to entice them to use Uber for transportation, to then surreptitiously charge the consumers a highly price later.

4.    Defendant was able to accomplish this scheme because it had received the consumers' method of payment at or before the time Uber gave consumers the upfront price, but then charged the consumers' credit card or method of payment a higher price later on.  Indeed, many consumers were overcharged on their credit cards and other payments methods and are unaware of it still to this day.  Defendant's records, however, are able to show each and every one of the overcharges during the Class Period.

5.      Defendant claims, "we strive to be clear about pricing, matching, and how our technology affects riders and drivers,"[1] and Defendant claims Upfront Pricing "gives you the information you need to choose the ride that best meets your needs and budget."[2] This is false and deceptive as it does not.

6.      Defendant's claim that "riders *no longer have to guess at prices*, they can *avoid surprises*, even when it's surging, and make better choices about which ride is right for their needs" is likewise false and misleading.[3]

7.      Likewise, Defendant represents that Upfront Pricing is so simple it involves "no complicated math and no surprises . . . ."[4]

8.      The deception is simple: the upfront price presented to consumers was false and misleading, as Defendant routinely charged consumers a higher amount on their credit cards and other payment methods.

### **PARTIES**

9.      Plaintiff Reed is a resident of Richmond, California. Plaintiff Reed purchased Defendant's service in the Richmond during the Class Period. On multiple occasions during the Class Period, before using the service she was quoted a price but was ultimately charged a higher price. Plaintiff Reed relied on Defendant's false, misleading, and deceptive price in purchasing the service. Had Plaintiff Reed known the truth – that the upfront price was false, misleading, and deceptive – Plaintiff Reed would not have purchased the service.  Plaintiff Reed brings the claims below seeking injunctive relief and restitution.  Plaintiff Reed does not seek damages pursuant to the CLRA in the Complaint.

---

[1] https://marketplace.uber.com/principles.

[2] https://www.uber.com/us/en/ride/how-uber-works/upfront-pricing/.

[3] https://marketplace.uber.com/pricing/upfront-pricing  (emphasis added).

[4] https://www.uber.com/newsroom/upfront-fares-no-math-and-no-surprises/.

CLASS ACTION COMPLAINT
- 2 -

1

2          10.     Plaintiff Kopko is a resident of Dickson City, Pennsylvania. Plaintiff Kopko

3    purchased Defendant's service in the Dickson City during the Class Period. On multiple occasions

4    during the Class Period, before using the service she was quoted a price but was ultimately charged

5    a higher price.  Plaintiff Kopko relied on Defendant's false, misleading, and deceptive price in

6    purchasing the service. Had Plaintiff Kopko known the truth – that the upfront price was false,

7    misleading, and deceptive – Plaintiff Kopko would not have purchased the service.  Plaintiff

8    Kopko brings the claims below seeking damages, actual and statutory, as well as injunctive relief.

9          11.     Plaintiff Livingston is a resident of Los Angeles, California. Plaintiff Livingston

10   purchased Defendant's service in Chicago, Illinois during the Class Period. Before using the

11   service she was quoted a price but was ultimately charged a higher price.  Plaintiff Livingston

12   relied on Defendant's false, misleading, and deceptive price in purchasing the service. Had

13   Plaintiff Livingston known the truth – that the upfront price was false, misleading, and deceptive

14   – Plaintiff Livingston would not have purchased the service.  Plaintiff Livingston brings the claims

15   below seeking damages, actual and statutory, as well as injunctive relief.

16         12.     Defendant Uber Technologies, Inc., ("Uber") is incorporated in Delaware and has

17   its principal place of business in San Francisco, California.

18         13.     Plaintiffs purchased the services based on the Upfront Prices. Plaintiffs remain in

19   the market for ride shares services. If the Upfront Prices were accurate, as represented on the App,

20   Plaintiffs would purchase the services again in the immediate future. Unfortunately, Plaintiffs have

21   no way to know whether the Upfront Prices are truthful prior to purchasing, and thus cannot rely

22   on the Upfront Pricing in purchasing services. If the Court were to issue an injunction ordering

23   Defendant to comply with the state and federal laws, and prohibiting Defendant's use of the

24   deceptive practices discussed herein, Plaintiffs would likely purchase the services again in the near

25   future.

26

27

28
                                      CLASS ACTION COMPLAINT

**JURISDICTION AND VENUE**

14.     Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) because:

      a.      Upon information and belief, this is a class action involving more than 100 class members;

      b.      Plaintiff Kopko is a citizen of the State of Pennsylvania and Defendant is a citizen of the States of Delaware and California;

      c.      Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

15.     This court has personal jurisdiction over Defendant because it is headquartered within California.

16.     Venue is proper because Defendant resides in this District and a substantial part of events and omissions giving rise to the claims occurred in this District.

**ADDITIONAL FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS**

17.     Defendant has consistently touted Upfront Pricing as a way for consumers to determine their total fares before purchasing rides, and Defendant has consistently represented to consumers that Upfront Pricing avoids surprises.

18.     This action is brought because Upfront Pricing often does not provide the total fare and consumers often are surprised (if they ever find out) that their ultimate fare differs from the Upfront Pricing fare they were quoted, resulting in them being charged an amount more than they were told when they agreed to the ride in the first place.

19.     When there is a difference between the fare as quoted through Upfront Pricing and the final fare, the final fare is always higher than the quoted fare; it is never lower.

**Uber's Pricing Methods**

20.     Beginning in the fall of 2016, Defendant started Upfront Pricing, which uses aggressively *estimated* time and distance amounts *before* the ride occurs.

21.     Uber's "Upfront Pricing" includes a base rate based on the time and distance for a trip, upcharges for busy times and areas, and, in some instances, a flat booking fee and/or tolls and

charges, all of which is estimated and presented to the consumer before the ride is purchased.

22.     In the normal course of business, Defendant maintains records regarding when and how each rider registers for the App.

23.     In the normal course of its business, Defendant maintains records regarding the number of trips taken by riders using the App.

24.     Defendant is able to identify and reproduce for each rider and each ride the "upfront" price that was quoted before the ride was purchased and the final, actual charge to each rider after each ride has ended.

**Defendant's Representations Regarding Upfront Pricing**

25.     Defendant placed the App into the stream of commerce and utilized Upfront Pricing to offer for sale and to sell shared rides to consumers including Plaintiffs and Class members.

26.     Defendant placed the App into the stream of commerce and utilized Upfront Pricing with knowledge and intent that consumers would rely on Upfront Pricing to choose between competing ride-share opportunities and when using the App to purchase rides.

27.     The App purports to show consumers the total cost of their ride in advance of booking the ride, which Defendant has made a feature of its marketing and advertising of itself and the App in order to gain competitive advantage in the marketplace.

28.     Defendant's blog at uber.com confirms the materiality of Upfront Pricing to consumer decision-making based upon the "certainty" that Upfront Pricing purportedly provides:

> "Why upfront fares? To help create certainty[.] In cities where upfront fares have been introduced, data shows that *riders tend to request more because they have more certainty about the price* – particularly during busy times when prices may be higher."[5] Likewise, the same blog page confirms, "Riders have more confidence when requesting trips with upfront fares. Data from other cities that

---

[5] https://www.uber.com/ur-PK/blog/introducing-upfront-pricing/ (emphasis added).

have introduced upfront fares suggests that upfront fares result in more overall trip requests . . . . In cities that use upfront fares, *riders tend to request more trips than they did before it was introduced because of increased transparency – there's no math and no surprises*."[6]

29.     Defendant has made numerous similar representations in addition to those identified above. Defendant's express and implied representations appear, among other places, on Defendant's web page and in other marketing materials distributed by Defendant to consumers.

30.     Defendant's Uber Marketplace web page acknowledges, in discussing the principles under which Uber operates, that "the work of connecting people to places and opportunities has real-word consequences, and that's a big responsibility" and that its "principled approach to marketplace design helps us live up to that responsibility"[7]

31.     On the same page Defendant claims it is "being upfront" and that it "believe[s] everyone should be equipped with the right information to make the best decisions for their needs;" hence Defendant "strive[s]to be clear about pricing, matching, and how [its] technology affects riders and drivers."



**Know before you go**

You know how much your airline ticket costs before you take off, so why should your ride be any different? Upfront pricing gives you the information you need to choose the ride that best meets your needs and budget.

There's no complicated math and no surprises—so you can sit back and enjoy the ride.

---

[6] *Id.* (emphasis added).

[7] https://marketplace.uber.com/principles.

32.     Defendant's Uber.com website advises consumers that "riders are shown the cost of their ride in advance" and that, as a result, "[r]iders feel confident taking trips when they have the information to make better decisions and drivers get more opportunities to earn."[8]

33.     According to the same web page, "Upfront prices are great for riders and drivers. Before booking a trip, riders are shown the price they'll pay at the end of the ride. Riders then have the confidence to request more trips, generating more demand for drivers."

34.     Similarly, "Because riders no longer have to guess at prices, they can avoid surprises, even when it's surging, and make better choices about which ride is right for their needs. In the time it took you to read this, we provided more than 2,000 upfront prices to riders, helping them get on their way."[9]

35.     Defendant's website advises riders they will "[k]now the cost before you ride, and pay the way you want."[10]

36.     Under the heading "Uber's upfront pricing explained," Defendant's website promises that "[b]efore you request a ride, the app shows an upfront price to your destination every time—so you can sit back and enjoy the trip" while likening its "know before you go" pricing to buying an airplane ticket—"no complicated math and no surprises," as seen below.[11]

37.     Defendant's representations are not limited to its uber.com website. Defendant's devoted YouTube channel features a question and answer video with Product Lead for Pricing, Brandon Trew, that contains the following representations, which are consistent with those set out above:[12]

_____

[8] https://marketplace.uber.com/pricing/upfront-pricing.

[9] *Id.*

[10] https://www.uber.com/us/en/ride/how-uber-works/upfront-pricing/.

[11] *Id.*

[12] https://www.youtube.com/watch?v=NCZ-vBC_a3E.

CLASS ACTION COMPLAINT
- 7 -

38.    [YouTube Video]: "But why give the price upfront rather than at the end? Providing the upfront price removes all the guesswork and the risk."

39.    [YouTube Video]: "By being upfront, we expand access, as riders with more information can make more confident choices and know with certainty what they're going to pay by the end."

40.    [YouTube Video]: "Ensuring prices serve riders and drivers. That's what moves us."

41.    Likewise, Defendant's sponsored Uber Facebook page has delivered the same messaging. For example, Defendant advised consumers in late 2016 that they would "see the total cost of your ride so there are no unwelcome surprises" with Upfront Pricing (again using the "know before you go" slogan.[13]



42.    The representations (and concomitant omissions) cited above are consistent with other marketing claims made by Defendant over time and across different media.

43.    These claims are incomplete, inaccurate, and are misleading in their particulars and on the whole because they lead reasonable consumers to believe that the Upfront Pricing that appears on the App is the price they will pay at the end of the ride and that is not always so.

44.    Defendant intended for consumers to rely upon its representations concerning the accuracy, transparency, simplicity, and certainty of Upfront Pricing.

45.    It would be reasonable for consumers to rely upon Defendant's representations concerning Upfront Pricing's accuracy, transparency, simplicity, and certainty when purchasing a

_____

[13] https://www.facebook.com/uber/videos/1551756198197993/.

CLASS ACTION COMPLAINT
- 8 -

shared ride.

46.    Defendant repeatedly acknowledges that consumers rely upon its Upfront Pricing scheme when it touts the fact that Upfront Pricing leads to more ride purchases by consumers based upon its apparent accuracy, transparency, simplicity, and certainty.

47.    The "upfront" price that appears in the App is not effectively qualified in any fashion and is presented as the fare a reasonable consumer may expect to pay at the ride's conclusion. The information that is available is inconspicuous, incomplete, and misleading. The screenshots below are illustrative of what consumers typically encounter in the App.



**Image A**                          **Image B**

48.    **Image A** depicts the user interface in the App once the rider has identified her pickup point and destination. The price in the superimposed yellow box is the "upfront" price. Consumers can pick between several options – UberX (for a typical car); Comfort (for a larger car) or Pool (which involves share the car with other passengers).

49.    **Image B** Once the consumers picks one of the options, that type of ride and the

CLASS ACTION COMPLAINT

price are confirmed. Here, the consumer selected Uber X and accepted the ride based on the "upfront" fare, which the consumer reasonably expects is the price for the ride.

50.     However, Despite Defendant's consistent marketing focus on pricing transparency and simplicity, receipts of actual fares paid by consumers demonstrate that Defendant routinely overcharges consumers amounts significantly higher than the Upfront Price stated to consumers.

51.     In fact, fares paid by consumers significantly differed from the Upfront Price despite no changes being made by the consumers to the original destination and/or when changes to the original duration were negligible or insignificant.

52.     Defendant's representations concerning Upfront Pricing's accuracy, transparency, simplicity, and certainty were made with the intent to generate sales of shared rides through the App and website, and in fact they did so.

53.     Defendant's representations are inaccurate and misleading and contain material omissions insofar as Defendant expressly or impliedly claims:

54.     that Upfront Pricing accurately represents the cost to the consumer of any or every Uber ride;

55.     that the fare that a consumer pays at the end of a trip invariably will be the fare quoted before purchasing the trip;

56.     that a consumer may rely on Upfront Pricing to provide an accurate representation of the fare for a trip when deciding whether to purchase a ride;

57.     that Upfront Pricing provides transparency and avoids surprises by informing consumers of the cost of a trip before purchase;

58.     that Defendant provides all of the information necessary to allow consumers to determine, fare-wise, whether to purchase a given Uber ride and/or whether to use another rideshare company or another travel option, e.g., a taxi; or

59.     that Upfront Pricing is accurate, transparent, simple and/or certain.

60.     In short, Defendant's advertising and marketing represents to the public that Upfront Pricing provides clarity and transparency to consumers, but consumers are being

CLASS ACTION COMPLAINT

continuously misled about the price of a given trip prior to purchase.

61.   As a direct and proximate result of Defendant's consistent and pervasive misrepresentations regarding Upfront Pricing, Plaintiffs and the Class have suffered damages.

62.   Uber's "upfront" price represents the actual value of each given ride to Plaintiffs and to other consumers.

63.   That representation was false, however, in each instance where the final fare exceeded the "upfront" price.

64.   Accordingly, in each such respective instance, Plaintiffs and the Class did not realize the benefit of the bargain and their expectations were not met.

65.   In each such respective instance, Plaintiffs and the Class paid more than the market value represented by the price bargained for. Plaintiffs and the Class bargained with Uber on a particular market value for a given ride. But in each respective instance where the final fare exceeded the "upfront" price, Plaintiffs and the Class paid an amount higher than reflected in the market price to which they and Defendant had agreed.

66.   For these reasons, the services Defendant provides through the App are worth less than Plaintiffs and the Class paid for them.

67.   Thus, through the use of misleading representations and omissions concerning its Upfront Pricing scheme, Uber commanded and obtained a price Plaintiffs and the Class would not have paid had they been fully informed.

68.   Absent Defendant's misrepresentations and omissions, Plaintiffs and the Class would have paid less for rides, i.e., less for Defendant's services, than they actually paid.

69.   The damages Plaintiffs and the Class have suffered include but are not limited to (a) the difference between the quoted "upfront" price and the final fare for all rides in which the final fare exceeded the "upfront" price and/or (b) the fare for rides Plaintiffs and the Class would not have purchased at all but for Defendant's misrepresentations and omissions.

70.   Defendant possesses data sufficient to ascertain the identity of each affected consumer and each such overcharge.

CLASS ACTION COMPLAINT

- 11 -

## CLASS ALLEGATIONS

71.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23.  Plaintiffs seek to represent the following classes (collectively the "Class") defined as follows:

        a.     All consumers who purchased a shared ride for a ride within California, using Upfront Pricing through the Uber App during the liability period ("California Class");

        b.     All consumers who purchased a shared ride for a ride within Pennsylvania, using Upfront Pricing through the Uber App during the liability period ("Pennsylvania Class"); and

        c.     All consumers who purchased a shared ride for a ride within Illinois, using Upfront Pricing through the Uber App during the liability period ("Illinois Class")

72.     Excluded from the Class are Defendant's current or former officers, directors, and employees; counsel for Plaintiffs and Defendant; and the judicial officer to whom this lawsuit is assigned.

73.     The requirements of Federal Rule of Civil Procedure 23 are satisfied because:

        A.    <u>Numerosity</u>: The members of the class are so numerous that joinder of all members is impracticable.  While the exact number of class members is presently unknown to Plaintiffs, based on Defendant's volume of sales, Plaintiffs estimate that it is in the hundreds of thousands.

        B.    <u>Commonality</u>: There are questions of law and fact that are common to the class members and that predominate over individual questions.  These include the following:

            i.     whether the Upfront Price was misleading to consumers;

            ii.    whether reasonable consumers would rely upon Defendant's Upfront Price in purchasing rides to believe it would be the price they would pay for the ride;

iii.    whether Defendant charged higher prices than the Upfront Price represented to consumers;

iv.    what representations Defendant has made regarding Upfront Pricing;

v.    what data accounted for in Defendant's pricing algorithm that cause an Upfront Price to increase over the course of a ride;

vi.    whether and when Upfront Pricing is in fact the actual fare paid by consumers;

vii.    whether Defendant knows or should have known that its representations were misleading above;

viii.    whether Defendant intended for Plaintiffs and the Class members to rely upon Defendant's representations in purchasing rides;

ix.    whether Defendant otherwise foresaw that Plaintiffs and the Class members would rely upon its representations in purchasing rides;

x.    whether and to what extent Plaintiffs and the Class suffered direct losses or damages;

xi.    whether Plaintiffs and the Class are entitled to actual damages or other forms of monetary relief; and

xii.    whether Plaintiffs and the Class are entitled to injunctive relief, restitution, or other forms of equitable relief.

C.    <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the class members because Plaintiffs suffered the same injury as the class members—*i.e.*, Plaintiffs purchased the services based on Defendant's misleading Upfront Pricing.

D.    <u>Adequacy</u>: Plaintiffs will fairly and adequately represent and protect the interests of the members of each class.  Plaintiffs do not have any interests that are adverse to those of the class members. Plaintiffs have retained competent counsel experienced in class action litigation and intends to prosecute this action vigorously.

E.     Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender.  Since the damages suffered by individual class members are relatively small, the expense and burden of individual litigation make it virtually impossible for the class members to seek redress for the wrongful conduct alleged, while an important public interest will be served by addressing the matter as a class action.

74.     The prerequisites for maintaining a class action for injunctive or equitable relief under Federal Rule of Civil Procedure 23(b)(2) are met because Defendant had acted or refused to act on grounds generally applicable to each class, thereby making appropriate final injunctive or equitable relief with respect to each class as a whole.

**FIRST CAUSE OF ACTION**
**(Violation of the California Consumers Legal Remedies Act – By the California Class)**
**Injunctive Relief Only**

75.     Plaintiffs incorporate by reference the allegations set forth above.

76.     Plaintiff Reed brings this claim individually and on behalf of the California Class.

77.     Plaintiff Reed and the California Class members are "consumers" under the California Consumers Legal Remedies Act ("CLRA"), California Civil Code section 1761(d).

78.     The Products are "services" under California Civil Code section 1761(b).

79.     Defendant is a "person" as defined in California Civil Code § 1761(c).

80.     Plaintiff Reed's and the California Class members' purchases of shared rides are "transactions" under California Civil Code section 1761(e).

81.     Defendant's representation of an Upfront Price was and is misleading, when Defendant actually charged more than the Upfront Price.

82.     Defendant's other representations and omissions concerning the accuracy, transparency, simplicity, and certainty of Upfront Pricing were and are false and/or misleading as alleged herein.

CLASS ACTION COMPLAINT
- 14 -

83.     Defendant's false or misleading representations and omissions were and are such that a reasonable consumer would attach importance to them in determining his or her purchasing decision, as Defendant has itself conceded publicly.

84.     Defendant's false or misleading representations and omissions were made to the entire Class.

85.     Defendant knew or should have known its representations and omissions were material and were likely to mislead consumers, including Plaintiff Reed and the Class.

86.     Defendant's practices, acts, and course of conduct in marketing and selling the shared rides and Upfront Pricing were and are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment.

87.     Defendant's false and misleading representations and omissions were designed to, and did, induce the purchase and use of shared rides and the App by Plaintiff Reed and Class members, and violated and continue to violate the following sections of the CLRA:

88.     § 1770(a)(5): representing that its services have characteristics or qualities which they do not have;

89.     § 1770(a)(7): representing that its services are of a particular standard, quality, or grade if they are of another;

90.     § 1770(a)(9): advertising services with intent not to sell them as advertised; and

91.     § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it was not.

92.     Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised rides, including its Upfront Pricing schemed, to unwary consumers.

93.     Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

94.     Defendant's wrongful business practices were a direct and proximate cause of actual harm to Plaintiff Reed and to each Class member.

95.     On information and belief, officers, directors, or managing agents at Defendant

CLASS ACTION COMPLAINT
- 15 -

1    authorized the use of the misleading statements about the services.

2        96.    At this time, Plaintiff Reed only seeks injunctive relief pursuant to Cal. Civ. Code

3    § 1780. However, Plaintiff Reed reserves the right to amend her complaint, seeking actual,

4    statutory, punitive damages, attorneys' fees and costs, any other relief that the Court deems proper

5    in law or in equity.

6        97.    Pursuant to Civil Code sections 1780 and 1782, Plaintiff Reed and California Class

7    members seek an injunction to bar Defendant from continuing their deceptive advertising

8    practices, and reasonable attorneys' fees and costs.

9                         **SECOND CAUSE OF ACTION**
10    **(Violation of the California False Advertising Law – By the California Class)**

11       98.    Plaintiffs incorporate by reference the allegations set forth above.

12       99.    Plaintiff Reed brings this claim individually and on behalf of the California Class.

13       100.   The California False Advertising Law ("FAL"), California Business and

14    Professions Code section 17500 *et seq.*, makes it unlawful for a person, firm, corporation, or

15    association to induce the public to buy its products by knowingly disseminating untrue or

16    misleading statements about the products.

17       101.   It also is unlawful under the FAL to make or disseminate any advertisement that is

18    "untrue or misleading, and which is known, or which by the exercise of reasonable care should be

19    known, to be untrue or misleading." *Id.*

20       102.   As alleged herein, the advertisements, policies, acts, and practices of Defendant

21    relating to Upfront Pricing were and are deceptive and misleading.

22       103.   As alleged herein, the advertisements, policies, acts, and practices of Defendant

23    misled consumers acting reasonably as to Defendant's representations about the accuracy and

24    simplicity of Upfront Pricing.

25       104.   Plaintiff Reed and the Class suffered injury-in-fact as a result of Defendant's

26    actions as set forth herein because, as reasonable consumers, they purchased shared rides in

27    reliance on Defendant's false and misleading claims concerning Upfront Pricing and paid fares

28

1   that exceeded the "upfront" price.

2       105.    Defendant's business practices as alleged herein constitute deceptive, untrue, and

3   misleading advertising pursuant to the FAL because Defendant has advertised Upfront Pricing in

4   a manner that is untrue and misleading, which Defendant knew or reasonably should have known,

5   and because Defendant omitted material information from its advertising.

6       106.    Defendant profited from sale of the falsely and deceptively advertised rides to

7   reasonable but unwary consumers including Plaintiff Reed and the Class and Defendant has

8   thereby been unjustly enriched.

9       107.    Pursuant to California Business & Professions Code section 17535, Plaintiff Reed

10   and the California Class members seek an injunction barring Defendant from continuing its

11   deceptive advertising practices as well as restitution.

12   **THIRD CAUSE OF ACTION**

13   **(Violation of the California Unfair Competition Law – By the California Class)**

14       108.    Plaintiffs incorporate by reference the allegations set forth above.

15       109.    Plaintiff Reed brings this claim individually and on behalf of the California Class.

16       110.    "Unfair competition" is defined by Business Professions Code Section § 17200 as

17   encompassing several types of business "wrongs," including: (1) an "unlawful" business act or

18   practice, (2) an "unfair" business act or practice, (3) a "fraudulent business act or practice, and (4)

19   "unfair, deceptive, untrue or misleading advertising."  The definitions in § 17200 are drafted in the

20   disjunctive, meaning that each of these "wrongs" operates independently from the others.

21       111.    By and through Defendant's unlawful conduct alleged in further detail above and

22   herein, Defendant engaged in conduct which constitutes unlawful, unfair, and/or fraudulent

23   business practices, specifically Defendant's unlawful taking of unearned monies, and Defendant's

24   unlawful refusal to issue refunds to consumers.

25       112.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice."

26   Cal. Bus. & Prof. Code § 17200.

27       113.    Defendant's acts, omissions, misrepresentations, practices, and non- disclosures as

28                                               CLASS ACTION COMPLAINT

1   alleged herein constitute business acts and practices.

2       114.    Defendant's acts, omissions, misrepresentations, practices and nondisclosures as

3   alleged herein constitute unlawful, unfair, and fraudulent business practices in that they have the

4   capacity to deceive reasonable consumers, including Plaintiff Reed and the Class, as to the

5   accuracy, transparency, simplicity, and certainty of Upfront Pricing and, as a result, as to the true

6   cost of purchasing Defendant's services.

7   **Unlawful Prong**

8       115.    The acts alleged herein are "unlawful" under the UCL in that they violate at least

9   (a) the False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* and (b) the Consumers

10  Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

11      116.    Defendant had other reasonably available alternatives to further its business

12  interests, other than the unlawful conduct described herein.

13      117.    Instead Defendant deliberately misrepresented to Plaintiff Reed's and the Class'

14  the upfront pricing of the cab rides, and then, charged additional fees exceeding the represented

15  pricing.

16  **Unfair Prong**

17      118.    Defendant's actions and representations constitute an "unfair" business act or

18  practice under Business & Professions Code § 17200, et seq. in that Defendant's conduct is

19  substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive,

20  and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such

21  conduct. Without limitation, it is an unfair business act or practice for Defendant to knowingly or

22  negligently represent to the consuming public its "upfront" pricing representing that it is the only

23  charge that consumers will receive for the ride, and thereafter, surreptitiously withdraw additional

24  charges after the transaction already occurs.

25      119.    Such conduct by Defendant is "unfair" because it offends established public policy

26  and/or is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers

27  in that consumers are led to believe that Defendant will only charge the initially stated fee, enticing

28

CLASS ACTION COMPLAINT
- 18 -

them to order Uber as opposed to other available cab services.

120.   Plaintiff Reed could not have reasonably avoided the injury she suffered because she expected the fee to be what Uber represented it to be for the rides.

121.   The additional charges caused damages to Plaintiff Reed, and Plaintiff Reed was not presented with truthful options at the inception of the ride, to make a determination of whether to proceed with Uber or another cab service.

122.   Plaintiff Reed reserves the right to allege further conduct that constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date, as Defendant continues to mislead the public.

123.   Defendant's conduct with respect to the advertising and sale of its services regarding shared rides also was and is unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of the False Advertising Law and Consumers Legal Remedies Act.

124.   Defendant's conduct with respect to the advertising and sale of services regarding shared rides was and is unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumer themselves could reasonably have avoided.

125.   Reasonable consumers, including Plaintiff Reed and the California Class, purchased shared rides believing that the Upfront Price accurate, transparent, simple, and certain, as claimed by Defendant when in fact it was not—a fact of which consumers could not reasonably have become aware.

**Fraudulent Prong**

126.   A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

127.   As set forth herein, Defendant's representations and omissions about the accuracy, transparency, simplicity, and certainty of the Upfront Pricing were and are false and likely to mislead or deceive the public because a significant portion of the general consuming public, acting

CLASS ACTION COMPLAINT

- 19 -

1    reasonably in the circumstances, could be misled by Defendant's representations and omissions.

2        128.    Defendant profited from its sale of the falsely, deceptively, and unlawfully

3    advertised and marketed services regarding shared rides to unwary consumers.

4        129.    Defendant's conduct directly and proximately caused and continues to cause

5    substantial injury to Plaintiff Reed and the other Class members. Plaintiff Reed and the Class have

6    suffered injury-in-fact as a result of Defendant's unlawful conduct including but not limited to the

7    expending money on and paying a premium for the services.

8        130.    Plaintiff Reed and the Class are likely to continue to be damaged by Defendant's

9    deceptive practices, because Defendant continues to disseminate misleading information about

10   Upfront Pricing through the marketing and advertising of the App and of shared rides. Thus,

11   injunctive relief enjoining Defendant's deceptive practices is proper.

12       131.    In accordance with Bus. & Prof. Code § 17203, Plaintiff Reed seeks an order

13   enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or

14   fraudulent acts and practices, and to commence a corrective advertising campaign as well as

15   restitution.

16                           **FOURTH CAUSE OF ACTION**

17   **(Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law)**

18       132.    Plaintiffs incorporate by reference the allegations set forth above.

19       133.    Plaintiff Kopko brings this action on behalf of herself and the Pennsylvania Class

20   against Defendant.

21       134.    Plaintiff Kopko, Defendant, and the proposed Pennsylvania Class members are

22   "persons" within the meaning of 73 P.S. § 201-2(2).

23       135.    Plaintiff Kopko and the proposed Pennsylvania Class members are consumers.

24       136.    The PUDPCPL provides that a person has engaged in a deceptive trade practice

25   when, in the course of business, he or she "[r]epresents that goods or services have sponsorship,

26   approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," [or] "are

27   of a particular standard, quality, or grade, or that goods are of a particular style or model, if they

28

are of another." 73 P.S. § 201-2(4).

137.   Defendant was engaged in "trade" and "commerce" within the meaning of 73 P.S. § 201-2(3). Among other things, Defendant advertised, promoted, and distributed the services.

138.   Prior to Plaintiff Kopko's and the proposed Pennsylvania Class members' purchase of the services, Defendant engaged in unfair and deceptive practices that violated the PUTPCPL. As set forth in detail above, Defendant made statements and omitted material information that had and continue to have the capacity to deceive the public and caused injury to Plaintiff Kopko and proposed Pennsylvania Class members because:

139.   Defendant made representations about the price of the services with the intent not to sell them as advertised;

140.   Defendant failed to comply the terms of the written guarantee about the prices, made prior to the purchase of the services; and

141.   Engaging in fraudulent and deceptive conduct which creates the likelihood of confusion or of misunderstanding, as described above.

142.   Plaintiff Kopko and proposed class members reasonably expected that the services would cost the amount stated in the Upfront Prices, both prior to and at the time of purchase, and reasonably expected that Defendant would charge only the Upfront Price.  These representations and affirmations of fact made by Defendant, and the facts they concealed or failed to disclose, are material facts that were likely to deceive reasonable consumers, and that reasonable consumers would, and did, rely upon in deciding whether or not to purchase the services.  Defendant, moreover, intended for consumers, including Plaintiff Kopko and proposed Pennsylvania class members, to rely on these material facts.

143.   Defendant had exclusive knowledge that the services would likely cost more than the Upfront Price, set forth above which gave rise to a duty to disclose these facts. Defendant breached that duty by failing to disclose these material facts.

144.   The injury to consumers by this conduct greatly outweighs any alleged countervailing benefits to consumers or competition under all circumstances.  There is a strong

1  public interest in an honest consumer marketplace, as well as truthfully advertising and disclosing

2  consumer of the price to be paid for services.

3      145.    Had Plaintiff Kopko and proposed class members known about the services would

4  cost more than the Upfront Price, they would not have purchased the services or would have paid

5  less than they did for them because they weighed the cost and quality of alternatives. As a direct

6  and proximate result of Defendant's actions, Plaintiff Kopko and proposed class members have

7  suffered ascertainable loss and actual damages.

8      146.    Plaintiff Kopko and Pennsylvania Class members had no way of discerning that

9  Defendant's representations were false and misleading prior to purchasing the services, or

10 otherwise learning the facts that Defendant had concealed or failed to disclose prior to purchasing

11 the services.  Plaintiff Kopko and Pennsylvania Class members did not, and could not, unravel

12 Defendant's deception on their own.

13     147.    Defendant had an ongoing duty to Plaintiff Kopko and the Pennsylvania Class to

14 refrain from unfair and deceptive practices under the PUTPCPL in the course of their business.

15 Specifically, Defendant owed Plaintiff Kopko and Pennsylvania Class members a duty to disclose

16 all the material facts concerning the Upfront Pricing because they possessed exclusive knowledge

17 about the services, intentionally concealed that knowledge from Plaintiff Kopko and the

18 Pennsylvania State Class, and made misrepresentations that were rendered misleading because

19 they were contradicted by withheld facts.

20     148.    Defendant's violations present a continuing risk to Plaintiff Kopko and the

21 Pennsylvania Class, as well as to the general public.  Defendant's unlawful acts and practices

22 complained of herein affect the public interest.

23     149.    Plaintiff Kopko and the proposed Pennsylvania Class seek an order enjoining

24 Defendant's unfair and deceptive acts or practices, and awarding damages, statutory damages,

25 attorneys' fees, and any other just and proper relief available under the PUTPCPL.  73 Pa. Cons.

26 Stat. § 201-9.2(a).

27

28

CLASS ACTION COMPLAINT

- 22 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIFTH CAUSE OF ACTION**
**(Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act)**
**(815 ILCS 505/1, et seq.)**

150.    Plaintiffs incorporate by reference the allegations set forth above.

151.    Plaintiff Livingston brings this action on behalf of herself and the Illinois Class against Defendant.

152.    Plaintiff Livingston and the proposed Illinois Class members are "person[s]" as that term is defined in 815 ILCS 505/1(c). In addition, Plaintiff Livingston and the proposed Illinois State Class members are "consumers" as that term is defined in 815 ILCS 505/1(e).

153.    The Illinois Consumer Fraud and Deceptive Business Practices Act prohibits "unfair or deceptive acts or practices, including but limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of any material fact . . . in the conduct of any trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

154.    In the course of their business, Defendant misrepresented, concealed and suppressed material facts concerning the Upfront Pricing.

155.    Defendant's misrepresentations and false, deceptive, and misleading statements with respect to the Upfront Pricing, as described above, constitute deceptive acts or practices.

156.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Livingston and the proposed Illinois Class members, into believing that the services were one price when they were in fact another.

157.    Defendant's unfair or deceptive trade practices were fraudulently concealed and likely to, and did, deceive reasonable consumers, including Plaintiff Livingston and the proposed Illinois Class members. Reasonable consumers purchased the services believing they would cost the amount quoted in the Upfront Price, both prior to and at the time of purchase, and reasonably expected that Defendant would charge them the amount of the Upfront Price, and that they would

CLASS ACTION COMPLAINT

be charged the amount of the Upfront Price. Defendant intentionally and knowingly misrepresented and/or omitted material facts regarding its Upfront Prices with the intent of deceiving Plaintiff Livingston and the proposed Illinois Class members.

158.   Defendant's conduct in making false representations about the Upfront Price has no such utility or countervailing benefit and consumers could not have reasonably avoided their injury.

159.   Plaintiff Livingston and the proposed Illinois Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and its concealment of and failure to disclose material information. Had Plaintiff Livingston and proposed class members known about the design Upfront Prices were not true, they would not have purchased the services or would have paid less than they did for them because they weighted the cost and quality of alternatives.

160.   Defendant intentionally and knowingly misrepresented material facts regarding the services with intent to mislead Plaintiff Livingston and the proposed Illinois Class members.

161.   Defendant knew or should have known that its conduct violated the Consumer Fraud and Deceptive Business Practices Act.

162.   Defendant's representations of the Upfront Prices were material to Plaintiff Livingston and the proposed Illinois State Class members.

163.   Defendant's violations present a continuing risk to Plaintiff Livingston and the proposed Illinois Class members as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

164.   As a direct and proximate result of Defendant's violations of the Consumer Fraud and Deceptive Business Practices Act, Plaintiff Livingston and the proposed Illinois Class members have suffered injury-in-fact and/or actual damages.

165.   Pursuant to 815 ILCS 505/10a(a), Plaintiff Livingston and the proposed Illinois Class members seek monetary relief against Defendant in the amount of actual damages, attorneys' fees and costs, and punitive damages because Defendant acted with fraud and/or malice and/or

1    were grossly negligent.

2         166.    Plaintiff Livingston and the proposed Illinois practices, punitive damages, and

3    attorneys' fees, and any other just and proper relief available under 815 ILCS § 505/1 *et seq.*

4                              **SIXTH CAUSE OF ACTION**
5              **(Violation of the Illinois Uniform Deceptive Trade Practices Act)**
                              **(815 ILCS 510/1, et seq.)**

6         167.    Plaintiffs incorporate by reference the allegations set forth above.

7         168.    Plaintiff Livingston brings this action on behalf of herself and the Illinois Class

8    against Defendant.

9         169.    Defendants are "person[s]" as that term is defined in 815 ILCS 505/1(5).

10        170.    Illinois's Uniform Deceptive Trade Practices Act ("IUDTPA"), 815 ILCS 510/2(a),

11   prohibits deceptive trade practices, including among others, "(5) represent[ing] that goods or

12   services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that

13   they do not have . . .; (7) represent[ing] that goods or services are of a particular standard, quality,

14   or grade or that goods are a particular style or model, if they are of another;. . . .  (9) advertis[ing]

15   goods or services with intent not to sell them as advertised; . . .  [and] (12) engag[ing] in any other

16   conduct which similarly creates a likelihood of confusion or misunderstanding."

17        171.    In the course of their business, Defendant misrepresented, concealed, and

18   suppressed material facts concerning the Upfront Prices.

19        172.    Defendant's misrepresentations and false, deceptive, and misleading statements

20   with respect to the Upfront Prices, as described above, constitute deceptive acts or practices.

21        173.    Defendant' unfair or deceptive acts or practices were likely to and did in fact

22   deceive reasonable consumers, including Plaintiff Livingston and the proposed Illinois Class

23   members, Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive

24   reasonable consumers, including Plaintiff Livingston and the proposed Illinois Class members,

25   into believing that they would be charged the Upfront Price.

26        174.    Defendant's unfair or deceptive trade practices were fraudulently concealed and

27   likely to, and did, deceive reasonable consumers, including Plaintiff Livingston and the proposed

28                              CLASS ACTION COMPLAINT

Illinois Class members. Reasonable consumers purchased the services believing they would cost the amount quoted in the Upfront Price, both prior to and at the time of purchase, and reasonably expected that Defendant would charge them the amount of the Upfront Price, and that they would be charged the amount of the Upfront Price. Defendant intentionally and knowingly misrepresented and/or omitted material facts regarding its Upfront Prices with the intent of deceiving Plaintiff Livingston and the proposed Illinois Class members.

175.    Defendant's violations present a continuing risk to Plaintiff Livingston and the proposed Illinois State Class members as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

176.    As a direct and proximate result of Defendant's violations of the Consumer Fraud and Deceptive Business Practices Act, Plaintiff Livingston and the proposed Illinois Class members have suffered injury-in-fact and/or actual damage.

177.    Plaintiff Livingston  and the proposed Illinois Class members also seek an order enjoining Defendant's unfair and/or deceptive acts or practices, attorneys' fees, and any other just and proper relief available under 815 ILCS § 510 *et seq*.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendant as follows:

A.    For an order enjoining Defendant from continuing the unlawful practices set forth above;

B.    For an order declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C.    For damages on behalf of Plaintiff Kopko and the Pennsylvania Class;

D.    For damages on behalf of Plaintiff Livingston and the Illinois Class;

E.    For restitution (but not damages pursuant to the CLRA) on behalf of Plaintiff Reed and the California Class;

F.    For reasonable attorneys' fees and costs of suit; and

CLASS ACTION COMPLAINT

- 26 -

1    G.      For such other relief as the Court deems proper.

2                          **<u>DEMAND FOR JURY TRIAL</u>**

3    Plaintiffs hereby demand trial by jury on all claims so triable.

4    Date:  January 28, 2022             Respectfully submitted,

5

6                                        **REESE LLP**
                                         */s/ Michael R. Reese*
7                                        Michael R. Reese (Cal. State Bar No. 206773)
                                         *mreese@reesellp.com*
8                                        Sue J. Nam (Cal. State Bar No. 206729)
                                         *snam@reesellp.com*
9                                        100 West 93rd Street, 16th Floor
                                         New York, New York 10025
10                                       Telephone: (212) 643-0500
                                         Facsimile:  (212) 253-4272
11

12                                       **REESE LLP**
                                         George V. Grande (Cal. State Bar No. 316050)
13                                       *ggrande@reesellp.com*
                                         8484 Wilshire Boulevard, Suite 515
14                                       Los Angeles, California 90211
                                         Telephone: (310) 393-0070
15                                       Facsimile: (212) 253-4272

16
                                         **REESE LLP**
17                                       Charles D. Moore (to be admitted *pro hac vice*)
                                         100 South 5th Street, Suite 1900
18                                       Minneapolis, MN 55402
                                         Telephone: 212-643-0500
19                                       Fax: 212-253-4272
                                         Email: *cmoore@reesellp.com*
20

21                                       *Counsel for Plaintiffs and the Proposed Class*

22

23

24

25

26

27

28
                          CLASS ACTION COMPLAINT
                                - 27 -